UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ICE CUBE BUILDING, LLC<br>*Plaintiff,* | )<br>)<br>)<br>) | NO. 3:17-cv-00973 (KAD) |
| v. | )<br>)<br>) | |
| SCOTTSDALE INSURANCE COMPANY<br>*Defendant.* | )<br>) | April 5, 2019 |

## RULING AND ORDER ON THE DEFENDANT'S
## MOTION FOR RELIEF REGARDING THE SUPPLEMENTAL REBUTTAL REPORT

Kari A. Dooley, United States District Judge

**Introduction**

This case arises out of an insurance coverage dispute between the Plaintiff, Ice Cube Building, LLC and its insurer, Defendant Scottsdale Insurance Company, stemming from certain losses to the Plaintiff's property. Pending before the Court is the Defendant's motion to preclude the Plaintiff from using or relying upon the supplemental expert report provided to the Defendant on November 28, 2018.

**Procedural History**

Per the parties' agreed-upon scheduling order, the Plaintiff disclosed its expert, along with his report, on November 3, 2017. The Defendant disclosed its expert witnesses on July 27, 2018. Efforts to schedule the Plaintiff's expert for deposition were largely unsuccessful due to the Plaintiff's former counsel's failure to cooperate in the effort. Eventually, the parties scheduled the deposition for September 25, 2018. Around this time, the Plaintiff determined to change counsel. When the Defendant sought confirmation that the deposition was going forward, it received conflicting and inadequate responses. However, by the day before the deposition, it was clear

Plaintiff's counsel had told the expert not to travel for the deposition. Notwithstanding his involvement in this series of events, Plaintiff's current counsel did not file an appearance until September 27, 2018. After substitute counsel appeared, the Defendant was again unable to obtain dates for deposing the expert. As a result, on October 12, 2018, the Defendant filed a motion to compel the deposition. In response, on October 24, 2018, the Plaintiff filed an objection to the motion to compel, as well as a motion to amend the scheduling order. In the motion to amend, the Plaintiff sought to extend several deadlines to include "the dates by which the parties' expert reports are to be designated (allowing for additional work by the experts)." The Defendant objected, citing the Plaintiff's disclosure deadline of November 2017, the significant passage of time since the Plaintiff's disclosure, and the fact that the relief requested would move the case backwards in terms of discovery.

The Court convened a hearing on the pending motions on November 6, 2018. The Court denied the Plaintiff's request to extend the deadline to disclose a new expert report or to otherwise reset the discovery clock in the case. The Court also denied the request to move the discovery deadline. Because the deadline was January 14, 2019, it appeared to the Court that the other discovery the Plaintiff intended to undertake could be accomplished within the remaining available time.

**The Instant Motion**

On November 29, 2018, the Defendant filed an Emergency Motion for Discovery Conference related to the then-imminent deposition of the Plaintiff's disclosed expert, Dr. Hall. The Court convened a telephonic conference that same day. At the conference, the Court learned that on November 28, 2018, two days before the scheduled deposition, the Plaintiff had disclosed an updated and amended report from Dr. Hall. It was identified as a supplemental rebuttal to the

Defendant's expert report. The Defendant asked the Court to preclude the expert report on a variety of grounds. The Court ordered that the deposition to go forward, but only on the previously disclosed report. The Court did so as a means of giving the Defendant's counsel the opportunity to review the report, which he had not had an opportunity to do; to give the Plaintiff the opportunity to file an opposition to the motion; to give both parties the opportunity to meet and confer in an effort to resolve the disagreement; and to allow the Court time to review the submissions, in the event no agreement was reached. It was further ordered that if no agreement could be reached, and the Court were to allow the new expert disclosure, the deposition would be reconvened at a to-be-determined cost to the Plaintiff because of the untimely disclosure.

**Discussion**

The Court's first task is to determine whether the supplemental report is (a) an untimely expert disclosure which the Court precluded at the November 6, 2018 hearing; (b) a rebuttal report pursuant to Rule 26; or (c) a supplemental report necessitated by the discovery of previously unknown and unavailable information, which renders the original opinion inaccurate or misleading.

The Plaintiff argues that the supplemental report is a combination of a rebuttal of the Defendant's experts and a supplemental report based upon a review of materials not reviewed and unavailable in advance of the prior disclosure. The Plaintiff denies that the supplemental report is an effort to change or expand the opinions contained in the original report. The Defendant argues first that the purported "rebuttal" is an expansion of the opinions contained in the original report; and second, that the Plaintiff's purported need for supplementation based upon newly-discovered information fails largely because the majority of the information cited in the supplemental report was available to the expert when he issued his original report.

When an expert disclosure is not timely, the Court considers four factors to determine whether to preclude the expert's testimony: (1) the party's explanation for the failure to comply with the discovery order; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance. *Softel Inc. v. Dragon Med. &Sciu. Commc'ns. Inc.,* 118 F.3d 955, 961 (1997). This Court already denied the Plaintiff's request that it be permitted to disclose an amended or new expert disclosure beyond the time permitted under the scheduling order. So if the Court determines that the supplemental report falls into this category, additional analysis of the *Softel* factors is not warranted. These factors were discussed on November 6, 2018 and supported the Court's denial of the Plaintiff's request.

On November 6, 2018, the Plaintiff stated its intention of disclosing an updated expert disclosure. The hearing began with the Court trying to pin down a date for Dr. Hall's deposition:

> Mr. Bonnano: Your Honor, I don't know what date he's available for his deposition. I believe he's here next week for an inspection on the 15th. Counsel has been advised that he's going to be doing the inspection, or a follow-up inspection of the building, and I offered dates around there in order to minimize how many times he needs to be deposed.
>
> The Court: But doesn't that in and of itself create a problem, Counsel? Your disclosure obligation is so far gone, you're going to what? Disclose a new report a new expert report months and months after the fact?
>
> Mr. Bonnano: Yes, and it is a problem.
>
> The Court: It's a problem for you because it's not permitted unless I say it's permitted.
>
> Mr. Bonnano: Absolutely. No question. We are in a prejudiced spot, your Honor. I'm not pretending that deadlines haven't been missed. I'm taking over from prior counsel.

(ECF No. 75, Tr. 5.)

In addition, counsel made clear that the deficiencies of predecessor counsel rendered the expert opinion of little value:

> Mr. Bonnano: I'm not taking the position here that there weren't scheduling orders in place and that my predecessor counsel had an opportunity to do this the right way. That would fall upon deaf ears, and frankly it's not true. What I'm trying to say is that I think it's been clear there's been something of a lack of prosecution. It's a failure to prosecute this on any real level.
>
> The Court: Well, he got an expert. He got – he provided his expert with whatever information he needed. He had that expert disclose a report. I means, it's –
>
> Mr. Bonnano: Your honor, I mean, I would ask the Court – I mean, if you look at the expert disclosure, there's nothing there as far as, you know, an actual competent disclosure and what it should be. This is an issue that is going to have an absolute prejudicial effect on the case.

(*Id*. at 26-27.)

The Plaintiff's claim that the supplemental report, disclosed three weeks later, does not alter or expand the original expert disclosure does not withstand scrutiny. The Court has reviewed, compared, and contrasted the two reports. There is little question that the supplemental report is, in significant ways, a new and expanded expert disclosure, precluded by this Court's November 6, 2018 Order. For example, Dr. Hall includes a discussion of the ATC Report from October 31, 2016. He expands his report to include an opinion that "lap seems opened allowing water to breach the membrane" based upon James Coffey's deposition. He includes additional attachments to support and bolster his conclusions. He discusses the two different cost estimates and offers an opinion that one of them is a fair representation of the work to be performed. He added additional weather data. And, as noted by the Defendant, the information offered to "rebut" the Defendant's experts, is, in several respects, rebuttal by expansion of the original opinion critiqued by the Defendant's experts. For example, in the original report, Dr. Hall attached Photograph Number 9 which depicts an instrument showing a reading of "3.13." The photograph is labeled "Moisture

content in ceiling tile." The only reference to the photograph is in the section titled "Site Inspection Photos. It reads,"I observed water damaged ceiling tiles many of which contained an excessive amount of water indicating active roof leaks ([Photos] 7-10, 23)." Dr. Hall's report contains no other reference to Photograph 9 and no discussion of the import of the instrument or the reading. The instrument is not identified; the reading is not explained. The report does not otherwise discuss moisture content in ceiling tiles or the extent to which, if at all, it informed his conclusions. In responding to a criticism by defense expert Mr. Solomon, Dr. Hall wrote in the supplemental report:

> The water stain is caused by an excessive amount of water. What Mr. Solomon fails to mention is that I measured the moisture content of the ceiling tile as 31.3% WME (wood moisture equivalent) using a Delmhorst BD2100 pronged moisture meter (Photo 9 in my report). The generally accepted limit of moisture for wood products in buildings is 12-15% WME. Mr. Solomon did not replicate my protocol to check my measurement, which by the way would be standard procedure for scientific investigations.

Under the guise of rebuttal, Dr. Hall has bolstered his original report by including information that he could have included at the time the original report was prepared, i.e. the analysis and investigative techniques he used to conclude that the "ceiling tile… contained an excessive amount of water indicating active roof leaks."

Insofar as much of the report, as found above, serves as an expansion or bolstering of the original report, it cannot fairly be characterized as rebuttal, offered "solely" to contradict or rebut evidence on the same subject matter offered by the Defendant. *See* Rule 26(a)(2)(D)(ii). Even though the Court concludes that some portions of the supplemental report (though not all of those labelled as such by Dr. Hall), can be fairly characterized as rebuttal, it is impossible to extract that which is true rebuttal from that which is not. But even if such an extraction were possible, the rebuttal portion of the supplemental report is untimely. Under Fed. R. Civ. P. 26(a)(2)(D)(ii),

rebuttal disclosures must be provided within 30 days of the disclosure of the expert report it rebuts. The Defendant disclosed its experts' reports in July 2018.[1]

However, this is not the end of the inquiry. The Court must also determine whether the report is an appropriate revision in light of newly discovered information which has rendered the original report misleading or inaccurate. Such reports may be disclosed "only if the expert subsequently learns of information that was previously unknown or unavailable, that renders information previously provided in an initial report inaccurate or misleading because it was incomplete." *Powerweb Energy, Inc. v. Hubbell Lighting, Inc.*, 2014 WL 1572746 at *1 (D. Conn. Apr. 17, 2014).

In the first instance, Dr. Hall's conclusions and ultimate opinion do not change. He does retract a conclusion regarding water damage in a utility room as being caused by a steam pipe, rather than a roof leak. Aside from this correction, there is no suggestion in the supplemental report that the first report was inaccurate or misleading. Further, the supplemental report identifies a much broader list of materials or information relied upon in its preparation. With a few exceptions, the additional information reviewed and relied upon was available to Dr. Hall in advance of the initial report. For example, Thomas Green, the Plaintiff's principal, was available to provide whatever information Dr. Hall needed. Mr. Coffey works for the Plaintiff as a part-time handyman of sorts and was also available to Dr. Hall. Mr. Coffey was present for at least a portion of one site inspection. Mr. Hancin, the Plaintiff's other expert, also accompanied Dr. Hall during his inspection, and as the Plaintiff's expert would also have been available. Simply because they were deposed after the disclosure does not render their knowledge and information beyond Dr. Hall's

---

[1] This is not a criticism. This was a decision by predecessor counsel. The court recognizes that current counsel might have made a different decision and is now dealing with several decisions of predecessor counsel with which he disagrees.

reach. In addition, the TMC Report identified in the supplemental disclosure was dated in 2016 and was generated by one of the Plaintiff's experts. As such, it too was clearly available to Dr. Hall.

In sum, the Court's allowance of the supplemental report would likely occasion all of the delays to the case, costs to both parties, and prejudice to the Defendant portended at the hearing on November 6, 2018. The Court was unwilling to essentially restart the expert discovery in this case then, and remains of such a mind.

In addition, allowing the report would encourage end-around litigation strategies. It is worth noting that the Plaintiff did not seek reconsideration of the Court's November 6, 2018 ruling. Therein, the Court ruled that the Plaintiff could not amend Dr. Hall's expert disclosure so late in the litigation, for all of the reasons stated on the record at the hearing. Whether intentionally or by a failed effort to appropriately rebut or supplement the original report, the Plaintiff did so anyway.

Accordingly, the supplemental expert report is precluded.

**SO ORDERED** at Bridgeport, Connecticut, this 5th day of April 2019.

>  */s/ Kari A. Dooley*
> KARI A. DOOLEY
> UNITED STATES DISTRICT JUDGE