**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
------------------------------x
                              :
ICE CUBE BUILDING, LLC        :    Civil No. 3:17CV00973(KAD)
                              :
v.                            :
                              :
SCOTTSDALE INSURANCE COMPANY  :    May 31, 2019
                              :
------------------------------x
```

## RULING ON MOTION TO COMPEL RESPONSES
## TO DEPOSITION QUESTIONS [Doc. #106]

Pending before the Court is a motion by plaintiff Ice Cube Building, LLC ("plaintiff") seeking to compel further deposition testimony from the corporate representative of defendant Scottsdale Insurance Company ("defendant"). [Doc. #106]. Defendant has filed a memorandum in opposition to plaintiff's motion [Doc. #108],[1] to which plaintiff has filed a reply [Doc. #111]. On May 8, 2019, Judge Kari A. Dooley referred plaintiff's motion to compel to the undersigned. [Doc. #107]. For the reasons articulated below, the Court **GRANTS** plaintiff's Motion to Compel Responses to Deposition Questions. [**Doc. #106**].

---

[1] Defendant has requested that the Court hold oral argument on the pending motion. See Doc. #108 at 1. "Notwithstanding that a request for oral argument has been made, the Court may, in its discretion, rule on any motion without oral argument." D. Conn. L. Civ. R. 7(a)3. The Court declines to hold oral argument on the pending motion and relies instead on the parties' briefing.

## A.    Background

The Court presumes general familiarity with the background of this insurance coverage dispute.[2] However, the Court will briefly address the procedural and factual background as relevant to the pending motion to compel.

Plaintiff owns real property located in Groton, Connecticut, which, at all times relevant hereto, was insured by a commercial property insurance policy issued by defendant. See Doc. #1, Complaint at ¶1, ¶3. Plaintiff alleges: "On or about January 8, 2016, and days and weeks thereafter, while said policy was in full force and effect, a snow and/or ice storm caused damage to the Plaintiff's property." Id. at ¶4. Plaintiff thereafter filed a claim with defendant for the alleged property damage. See id. at ¶6. On October 25, 2016, defendant partially denied plaintiff's claim for coverage, stating, inter alia, that there was a "payable loss of $10,050.60." Doc. #106-1 at 3.[3] On March 10, 2017, defendant issued payment to plaintiff for that amount. See Doc. #106 at 3. On March 27, 2017, defendant issued an additional payment to plaintiff in the amount of $16,863.33. See id. This litigation eventually ensued.

---

[2] Discovery in this matter has been particularly contentious, with seven discovery-related motions having been filed, including the one now at issue, in as many months.

[3] References to page numbers throughout this ruling refer to the page number denoted in the document's ECF header.

On December 5, 2018, defendant filed a Motion for Protective Order Against Deposing Scottsdale's Corporate Representative. [Doc. #61]. In that motion, defendant contended that plaintiff's Rule 30(b)(6) notice was "invalid on its face" and sought "irrelevant and overbroad testimony." Id. at 1. On December 26, 2018, plaintiff filed a memorandum in opposition to plaintiff's motion. [Doc. #68]. On February 11, 2019, Judge Dooley issued an order granting, in part, and denying, in part, defendant's motion for protective order. [Doc. #82]. In pertinent part, Judge Dooley ordered: "The Defendant shall produce for deposition the representative who is most knowledgeable regarding the handling, processing, adjusting and denial of the Plaintiff's claims under the policy or policies at issue in this litigation." Id. at 2.

On March 15, 2019, plaintiff's counsel deposed defendant's 30(b)(6) representative, Leslie Scappucci. See Docs. #106 at 3, #108 at 3; see also Doc. #108-4. Defendant concedes that during her deposition, "Ms. Scappucci was directed not to answer questions about: (1) Scottsdale's internal communications after it denied coverage, and (2) hypothetical questions." Doc. #108 at 3. Plaintiff contends that defense counsel improperly instructed Ms. Scappucci not to answer those questions, and seeks an order compelling her testimony as to certain limited areas of inquiry. See generally Doc. #106 at 5-12. Defendant

responds, <u>inter alia</u>: "Plaintiff should not be permitted to inquire about topics beyond the scope of inquiry permitted in the Court's order or about topics which are not discoverable under the law." Doc. #108 at 4.

**B.    Applicable Law**

Rule 30 of the Federal Rules of Civil Procedure governs depositions by oral examination, including objections lodged during the course of a deposition. Generally, "[a]n objection at the time of the examination ... must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection." Fed. R. Civ. P. 30(c)(2). Counsel "may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." <u>Id.</u>; <u>see also</u> <u>Kelley v. City of Hamden</u>, No. 3:15CV00977(AWT)(SALM), 2016 WL 5348568, at *2 (D. Conn. Sept. 23, 2016) ("A deponent may only refuse to testify under three circumstances: to preserve a privilege; to enforce a Court ordered limitation; or to present a motion under Rule 30(d)(3).").

**C.    Discussion**

Plaintiff seeks to compel five areas of testimony concerning: (1) conversations between Ms. Scappucci and her supervisor, April Hanson, about plaintiff's claim, <u>see</u> Doc. #106 at 6-7; (2) conversations between Ms. Scappucci and defendant's

4

Technical Resource Director, Robert McKenzie, about plaintiff's claim, see id. at 7-8; (3) conversations between Ms. Scappucci and her supervisor, Craig Rickets, about plaintiff's claim, see id. at 9; (4) conversations between Ms. Scappucci and Director of Claims, Bill Hoover, about plaintiff's claim, see id. at 9-10; and (5) the inspection of the property by defendant's estimator, Phillip D. Crowder, his estimate, and the due diligence conducted by defendant to understand that estimate, see id. at 10-12. Plaintiff contends that these areas of questioning/potential testimony do not implicate the work-product doctrine because any conversations were had outside the presence of coverage counsel, and by their very nature, are not tangible documents or things. See generally Doc. #106 at 5-12.

In response, defendant contends: (1) post-denial communications are outside the scope of Judge Dooley's February 11, 2019, Order, see Doc. #108 at 4-5; (2) defendant's post-denial communications are not relevant, see id. at 6-7; (3) post-denial communications are protected from disclosure pursuant to the work-product doctrine, see id. at 5-6; and (4) specific lines of questioning raised by plaintiff's counsel are "improper[,]" id. at 8.[4]

---

[4] The Court has reordered the sequence in which the arguments appear in defendant's brief to comport with the Court's discussion, below.

In reply, plaintiff asserts: (1) defendant continued to handle, process, and adjust plaintiff's claim after the issuance of the partial denial; (2)defendant's post-denial communications are relevant; and (3) the questions posed to Ms. Scappucci were not hypothetical. See Doc. #111 at 2-6. The Court addresses the parties' arguments in turn.

1. The Scope of Judge Dooley's Order

Defendant contends that the Court should not permit counsel for plaintiff to inquire into post-denial communications because they are outside the scope of inquiry permitted by Judge Dooley's February 11, 2019, Order. See Doc. #108 at 4. Plaintiff asserts in reply that defendant's position is "unreasonable and not supported" by Judge Dooley's Order, because "Defendant's conduct after its partial denial letter demonstrates that it continued to investigate the Plaintiff's claim and engage in activities which can clearly be characterized as 'handling, processing and adjusting' the plaintiff's claims." Doc. #111 at 3.

Defendant's claim that post-denial communications are not within the scope of Judge Dooley's Order is mistaken. It is perfectly reasonable to believe that conversations between or among defendants' employees, relating to the "handling, processing, adjusting, and denial of the Plaintiff's claims[,]" could have occurred after the initial partial denial of

coverage. Doc. #82 at 2. Thus, post-denial communications could reasonably fall within the ambit of Judge Dooley's February 11, 2019, Order, and defendant's argument on this point lacks merit.

2. <u>Relevance of Post-Denial Communications</u>

Defendant next contends that "any communications after Scottsdale denied coverage are not relevant to this litigation." Doc. #108 at 6. Plaintiff responds in reply that such communications "are virtually the most relevant information that can be obtained by a Plaintiff/Insured." Doc. #111 at 5.

As an initial matter, it is not apparent that defendant's counsel lodged an objection to any of the disputed lines of questioning on the grounds of relevance. <u>However</u>, even if he did, it would have been improper for defense counsel to instruct Ms. Scappucci not to answer on such grounds. "It is improper to instruct a witness not to answer a question on the basis of relevancy. If there is an objection to the question on such grounds, the court reporter should note the objection but the examination should proceed." <u>Mirlis v. Greer</u>, 249 F. Supp. 3d 611, 614 (D. Conn. 2017) (internal citation and quotation marks omitted); <u>see also</u> Fed. R. Civ. P. 30(c)(2).

Regardless, the Court is not persuaded that all post-declination communications are irrelevant to plaintiff's claim(s) and/or defense(s) to defendant's counterclaim. That is particularly so because defendant made an additional claim

payment to plaintiff, and appears to have continued to adjust plaintiff's claims, <u>after</u> defendant issued the initial partial coverage denial. <u>See</u> Doc. #111 at 3. "Although not unlimited, relevance, for purposes of discovery, is an extremely broad concept. The 2015 amendments to Rule 26 ... did not alter the underlying concept of relevance." <u>Alaska Elec. Pension Fund v. Bank of Am. Corp.</u>, No. 14CV7126(JMF), 2016 WL 6779901, at *2 (S.D.N.Y. Nov. 16, 2016) (internal citations and quotation marks omitted).

Accordingly, given the "extremely broad concept" of relevance, <u>id.</u>, the Court rejects defendant's sweeping argument that all post-declination communications are not relevant to plaintiff's claim(s) and defense(s) to defendant's counterclaim.

3. <u>Work-Product Doctrine</u>

The Court next addresses the parties' arguments related to the work-product doctrine.

*a. Applicable Law*

"The invocation of the work-product rule is governed by federal law. Accordingly, we look to Fed. R. Civ. P. 26(b)(3) for guidance." <u>Bowne of New York City, Inc. v. AmBase Corp.</u>, 150 F.R.D. 465, 471 (S.D.N.Y. 1993). Rule 26(b)(3) states: "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for

trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3)(A).

Rule 26 "defines a qualified immunity from discovery for documents 'prepared in anticipation of litigation or for trial.' This immunity applies as well to deposition testimony concerning the substance of such work-product." Ambase Corp., 150 F.R.D. at 471 (quoting Fed. R. Civ. P. 26(b)(3)); see also In re Circle K Corp., 199 B.R. 92, 97-98 (Bankr. S.D.N.Y. 1996) ("The immunity applies both to the tangible work product and deposition testimony concerning the substance of that work product."), aff'd, No. 96CV5801(JFK), 1997 WL 31197 (S.D.N.Y. Jan. 28, 1997). "Nonetheless, the rule does not protect from disclosure the underlying facts known to the party or his counsel, even if acquired in anticipation of litigation." Ambase Corp., 150 F.R.D. at 471. Further, "documents that were prepared in the ordinary course of business or that 'would have been created in essentially similar form irrespective of the litigation' are not protected by the work product doctrine." Weber v. Paduano, No. 02CV3392(GEL), 2003 WL 161340, at *3 (S.D.N.Y. Jan. 22, 2003) (quoting United States v. Aldman, 134 F.3d 134, 1202 (2d Cir. 1998)).

b. Anticipation of Litigation

Before addressing the parties' arguments on this issue, the Court first considers the question of when defendant reasonably

9

could have anticipated litigation. Curiously, despite this date

having the potential for significant ramifications, neither

party explicitly addresses the question in its briefing.

Defendant states, without citing any supporting authority, that

the date of partial declination, October 25, 2016, is the

appropriate trigger date. See generally Doc. #108. Plaintiff, on

the other hand, merely submits in a footnote: "It is difficult

to determine the exact declination of the claim. Defendant sent

its last official letter on October 25, 2016 and thereafter made

two payments in March of 2017. In December 2016, Plaintiff sent

its estimation of damages to Defendant outlining a litany of

damaged areas." Doc. #106 at 5 n.1.

"An insurer's decision to decline coverage is typically the

point at which the ordinary course of business ends and the

anticipation of litigation begins." Tudor Ins. Co. v. McKenna

Assocs., No. 01CV0115(DAB)(JCF), 2003 WL 21488058, at *3

(S.D.N.Y. June 25, 2003) (emphasis added). Nevertheless, "[t]he

determination as to whether materials are protected under [the

work-product doctrine] is necessarily fact-specific[,]" and

"courts presented with work product disputes in the insurance

context must be careful not to hold that documents are protected

from discovery simply because of a party's 'ritualistic

incantation' that all documents created by insurers are made in

preparation for litigation[.]" Weber, 2003 WL 161340, at *4.

Thus, although defendant could have anticipated litigation on the date it issued its initial coverage decision, October 25, 2016, the Court cannot presume that all conversations between Ms. Scappucci and her co-workers after that date are protected by the work-product doctrine. Indeed, "[t]here is no 'bright line' test for determining when an insurance company's investigative work passes from work in the ordinary course of the insurance company's business to work performed in anticipation of litigation." Travelers Cas. & Sur. Co. v. J.D. Elliott & Co., No. 03CV9720(GBD)(HBP), 2004 WL 2339549, at *2 (S.D.N.Y. Oct. 5, 2004); see also Weber, 2003 WL 161340, at *4 ("[I]nsurer-authored documents are more likely than attorney-authored documents to have been prepared in the ordinary course of business, rather than for litigation purposes."). Bearing that in mind, the Court turns to the parties' arguments.

   *c. Analysis*

Plaintiff contends that the work-product doctrine is inapplicable to Ms. Scappucci's 30(b)(6) deposition testimony because her testimony is not a document or tangible thing, and the communications sought occurred outside the presence of coverage counsel. See Doc. #106 at 4-5. On the other hand, defendant contends broadly that any communications between its employees that occurred after the date of partial declination are protected work-product. See Doc. #108 at 5. The parties'

11

arguments bring to mind the tale of Goldilocks when she happened upon the house of the three bears. Plaintiff's argument takes a too-narrow view of the work-product doctrine, while defendant's position takes one that is much too broad. Similar to the mama bear's bowl of porridge which was "just right," the law takes an appropriate middle ground which compromises the parties' respective positions.

First, as previously noted, the work-product doctrine does not apply exclusively to documents and tangible things, but may also encompass deposition testimony concerning the substance of that work-product or "[a]n attorney's analysis made in anticipation of litigation which has not been memorialized[.]" U.S. Info. Sys., Inc. v. Int'l Bhd. of Elec. Workers Local Union No. 3, No. 00CV4763(RMB)(JCF), 2002 WL 31296430, at *5 (S.D.N.Y. Oct. 11, 2002) ("[A]n attorney's analysis made in anticipation of litigation which has not been memorialized ... is immune from discovery just as if it had been reduced to writing."); see also Ambase Corp., 150 F.R.D. at 471. Thus, plaintiff's blanket argument fails. See Clute v. Davenport Co., 118 F.R.D. 312, 315 (D. Conn. 1988) ("[T]he defendants state, erroneously, that the work product doctrine only applies to physical objects and documents such as lists[.]" (citation and internal quotation marks omitted)).

Second, the work-product doctrine does not "protect from disclosure the underlying facts known to the party or his counsel, even if acquired in anticipation of litigation." Ambase Corp., 150 F.R.D. at 471. Thus, defendant's blanket assertion that all post-denial communications are covered by the work-product doctrine also fails.

In support of its broad interpretation of the work-product doctrine, defendant relies primarily on the case of Gilhuly v. Johns-Manville Corp., 100 F.R.D. 752 (D. Conn. 1983). Defendant's reliance is misplaced.[5] Defendant asserts that in Gilhuly, "the court declined to compel a party to answer deposition questions concerning conversations with co-workers where the substance of the conversations was 'in relation to the case and is thus work product,' even though counsel was not present." Doc. #108 at 5 (citing Gilhuly, 100 F.R.D. at 756). That representation stretches the holding in Gilhuly beyond reason.

In Gilhuly, an asbestos-related case, defendants moved to compel plaintiff to produce preliminary product identification lists that plaintiff had created, with the assistance of his co-workers, "in an attempt to remember what products were on the job, and what jobs." Gilhuly, 100 F.R.D. at 753 (citation and

---

[5] Notably, this 36-year old decision has been cited in other published decisions only six times, and not for the broad proposition for which defendant cites it.

internal quotation marks omitted). On several occasions,

plaintiff met with his counsel to discuss these lists and, over

time, to develop a final list which was produced to defendants.

See id. The Gilhuly court found that the preliminary lists

created by plaintiff were protected work-product. See id. at

754. As a result, the Court also found that plaintiff could not

be compelled to "answer any questions regarding the substance of

the preliminary lists." Id. at 755. In so ruling, the Court

reasoned that "when the party seeks to discover 'work product,'

that is the substance of the matter that was written down as

opposed to the facts that have been learned, or the mental

impressions of the attorney, the method of discovery is

unimportant[.]" Id. (sic). Thereafter, the Court addressed

defendants' motion to "compel answers to deposition questions

regarding plaintiff's conversations with co-workers during which

product exposure was discussed." Id. at 755-56 (emphasis added).

The Court determined that "any information which plaintiff

obtained from such meetings was gathered in relation to the case

and is thus work product." Id. at 756. It is apparent from the

context of the rest of the Gilhuly case that because those

conversations were ultimately memorialized in a document which

was found to contain work product, the conversations themselves

were also protected. The Gilhuly case cannot reasonably be read

to support the proposition that all conversations between

employees that relate to a case are considered work-product. Indeed, the more reasonable reading of Gilhuly is that conversations that relate to the substance of memorialized work-product cannot be inquired into by the opposing party.

Defendant states in a conclusory fashion that Ms. Scappucci's post-denial communications with her co-workers "included discussions about Scottsdale's outside counsel's opinions[.]" Doc. #108 at 6. Defendant offers no support for that statement, nor does defendant point the Court to any deposition testimony in support of such an assertion. "As with all objections to discovery, the burden of establishing that a document is work product is on the party who asserts the claim[.]" EDO Corp. v. Newark Ins. Co., 145 F.R.D. 18, 23 (D. Conn. 1992) (citation and internal quotation marks omitted). "More broadly, the party seeking to invoke the privilege must establish all elements of the privilege. This burden can be met only by an evidentiary showing based on competent evidence, and cannot be discharged by mere conclusory or ipse dixit assertions." Ambase Corp., 150 F.R.D. at 470. Defendant has failed to carry its burden of establishing that all post-denial communications between Ms. Scappucci and her co-workers implicate the work-product doctrine. Accordingly, the Court **GRANTS** plaintiff's motion to compel answers to deposition questions which were objected to on the grounds of work-product.

See Ocean Walk Ltd. v. Those Certain Underwriters at Lloyd's of

London, No. 03CV5271(DRH)(ARL), 2005 WL 8160993, at *2 (E.D.N.Y.

Jan. 25, 2005) ("The proponent of the work-product privilege

bears the burden of establishing its applicability, and bears

the consequences of all deficiencies in the record." (citation

and internal quotation marks omitted)); see also Weber, 2003 WL

161340, at *4 ("[I]n the insurance context, it is particularly

important that the party opposing production of the documents,

on whom the burden of proof as to privilege rests, demonstrate

by specific and competent evidence that the documents were

created in anticipation of litigation.").[6]

However, plaintiff does not have unlimited license to

question Ms. Scappucci. Plaintiff's counsel will not be

permitted to inquire into any conversations that may divulge

"the mental impressions of counsel ... or [defendant's] internal

strategy concerning preparation for any potential litigation

arising from the claim." Ocean Walk Ltd., 2005 WL 8160993, at

*5. Nor will plaintiff's counsel be permitted to inquire into

---

[6] Defendant contends that "[e]ach line of questioning" to which
plaintiff seeks to compel answers is "improper[]" because it is
beyond the scope of Judge Dooley's February 11, 2019, Order,
seeks irrelevant information, and/or seeks information protected
by the work-product doctrine. Doc. #108 at 8; see also id. at 8-
13. Because the Court has now rejected each of those arguments,
it will not address each line of questioning individually.

any conversations which concern the substance of any tangible

work-product. See Ambase Corp., 150 F.R.D. at 471.[7]

### 4. Hypothetical Questions

Last, plaintiff asserts that defense counsel improperly

instructed Ms. Scappucci not to answer what defense counsel

claimed was a hypothetical question. See Doc. #106 at 10-11.

Plaintiff contends: "Defendant is merely reluctant to say they

relied on Mr. Crowder's opinion and judgment with respect to the

first payment to Plaintiff and are attempting to find a way out

of answering that question by calling it a hypothetical

question." Id. at 11. Defendant concedes "that, in limited

---

[7] Defendant relies on the non-controlling case of State Farm
Mutual Auto. Ins. Co. v. New Horizont, Inc., 254 F.R.D. 227
(E.D. Pa. 2008), for the proposition that plaintiff's counsel is
now prohibited from eliciting certain testimony because he did
not ask Ms. Scappucci specific questions during her initial
deposition. See, e.g., Doc. #108 at 10. The facts of New
Horizont are inapposite to those before the Court. See New
Horizont, 254 F.R.D. at 235-36. If anything, it appears
plaintiff's counsel did not engage in certain questioning due to
the near-obstructionist objections lodged during Ms. Scappucci's
deposition.

On an unrelated, but important note, defendant does not mention
that the court in New Horizont had previously determined that
plaintiff's counsel had improperly instructed its 30(b)(6)
witness "not to disclose any facts learned from discussions with
counsel in preparation for the Rule 30(b)(6) deposition because
such facts constitute attorney work product." Id. at 30. Indeed,
there, the court had previously instructed the parties that "to
the extent that defense counsel's questions seek relevant, non-
privileged facts learned from discussions with counsel, and do
not seek counsel for State Farm's mental impressions,
conclusions, opinions, or legal theories, those questions must
be answered[.]" Id. (citation and internal quotation marks
omitted).

circumstances, a fact witness could be asked to testify in response to a hypothetical question[,]" but contends that plaintiff "has not identified any question which sought information relevant to this matter that it was not able to obtain as a result of Scottsdale's objection to Plaintiff's hypothetical question. In fact, Plaintiff never asked the question for which it now seeks an answer." Doc. #108 at 13. Defendant contends that plaintiff's position "misconstrues the question and the record[,]" and that plaintiff never asked Ms. Scappucci whether defendant "was relying on Mr. Crowder's opinion or Judgment." Id. (sic). Thus, because defendant contends plaintiff never asked the question for which it now seeks an answer, it is now foreclosed from doing so. See id. In reply, plaintiff asserts that the question at issue is not a hypothetical. See Doc. #111 at 5-6.

The Court has carefully reviewed the relevant portions of the deposition transcript applicable to this specific issue. See Doc. #108-4, Scappucci Deposition at Tr. 172:3-178:10. Regardless of whether plaintiff misconstrued the record or not, the fact remains that defense counsel improperly instructed Ms. Scappucci not to answer counsel's questions with respect to this line of inquiry. As previously noted, there are only three appropriate bases on which to instruct a deponent not to answer, and the hypothetical nature of a question is not one. See Fed.

R. Civ. P. 30(c)(2). Accordingly, the Court **GRANTS** plaintiff's

motion to compel answers to deposition questions as to this line

of inquiry. Barring any objection(s) on the ground of privilege

or work-product, Ms. Scappucci shall answer the questions

located on the following pages of her deposition transcript,

along with any appropriate follow-up questions: Tr. 174:7-9; Tr.

174:19-23; Tr. 176:6-8; Tr. 176:20-177:1; see also Tr. 177:19-

178:7 (plaintiff's counsel memorializing for the record the area

of inquiry that defense counsel instructed Ms. Scappucci not to

answer).

**D.    Continued Deposition**

In light of the foregoing, it will be necessary for

plaintiff to conduct a continued Rule 30(b)(6) deposition of Ms.

Scappucci. Given the July 30, 2019, summary judgment deadline

[Doc. #100], the Court hereby **ORDERS** that Ms. Scappucci's

continued Rule 30(b)(6) deposition occur on or before **June 28,**

**2019**. The continued deposition shall be limited to no more than

two hours time and shall be constrained to the lines of

questioning contemplated in plaintiff's motion to compel. Ms.

Scappucci's continued Rule 30(b)(6) deposition is not an

opportunity to take that deposition anew.

Finally, given the conduct of counsel during Ms.

Scappucci's initial deposition, the Court will require the

parties to coordinate the date of Ms. Scappucci's continued Rule

30(b)(6) deposition with a date available on the Court's
calendar. This will ensure that the Court is available to
address any objections lodged during that deposition. Therefore,
on or before the close of business on **June 7, 2019,** counsel for
plaintiff shall email the Court, with counsel for defendant
copied on that email, with three mutually agreeable dates on
which to take the continued Rule 30(b)(6) deposition of Ms.
Scappucci. That email may be sent to the undersigned's law
clerk, Attorney Katz, at the following email address:
samantha_katz@ctd.uscourts.gov.

It is the Court's hope, however, that the undersigned's
intervention during the deposition will not be necessary.
Nevertheless, the Court will not hesitate to impose sanctions on
any counsel if it finds that counsel is not acting in good faith
and/or is taking positions based on a frivolous reading of
controlling law.

**E.    Conclusion**

Therefore, for the reasons stated, the Court **GRANTS**
plaintiff's Motion to Compel Responses to Deposition Questions.
[**Doc. #106**].

SO ORDERED at New Haven, Connecticut this 31st day of May
2019.

/s/
HON. SARAH A. L. MERRIAM
UNITED STATES MAGISTRATE JUDGE
